DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| **FLAGSTAR BANK, FSB,** )<br>)<br>**Plaintiff,** )<br>**v.** )<br>)<br>**DENISE WALCOTT, DEAN C. WALCOTT,** )<br>**JR., wife and husband, and SECRETARY OF** )<br>**HOUSING AND URBAN DEVELOPMENT,** )<br>)<br>**Defendants.** )<br>_____) | **Civil Action No. 2018-0037** |

**Appearances:**
**A.J. Stone III, Esq.,**
St. Thomas, U.S.V.I.
    *For Plaintiff*

**Denise Walcott,** *Pro Se*
St. Croix, U.S.V.I.

**Angela P. Tyson-Floyd, Esq.,**
St. Croix, U.S.V.I.
    *For Defendant Secretary of Housing and*
    *Urban Development*

## MEMORANDUM OPINION

**Lewis, District Judge**

THIS MATTER comes before the Court on the Report and Recommendation ("R&R") (Dkt. No. 61) issued by Magistrate Judge Emile A. Henderson III regarding Defendant Denise Walcott's *pro se* "Emergency Motion for Temporary Restraining Order, Emergency Motion for Preliminary Injunction to Enjoin [Foreclosure] Sale Scheduled for August 17, 2023" ("Emergency Motion") (Dkt. No. 55). For the reasons that follow, the Court will adopt the Magistrate Judge's R&R, as modified herein, and deny Plaintiff's Emergency Motion.[1]

---

[1] On August 16, 2023, the Court entered an Order denying the Emergency Motion and indicating that a Memorandum Opinion would follow. (Dkt. No. 64). Because the Marshal's Sale was

## I. BACKGROUND

On August 10, 2018, Plaintiff Flagstar Bank, FSB ("Flagstar") filed a Complaint against Defendants Denise Walcott ("Ms. Walcott"), Dean C. Walcott, Jr., and the Secretary of Housing and Urban Development ("HUD") alleging causes of action for debt and foreclosure of a mortgage on real property. (Dkt. No. 1). In the Complaint, Flagstar alleged, *inter alia*, that Ms. Walcott executed a Note on July 6, 2012, in which she promised to pay Flagstar the principal amount of $126,704.00, together with interest at the rate of 3.545% per annum, in equal monthly payments of $572.15. *Id.* at ¶¶ 8-10. The Note was secured by a Mortgage granted to Flagstar and Mortgage Electronic Registration Systems, Inc., as Nominee for Flagstar, that was executed by Ms. Walcott and Dean C. Walcott, Jr. (collectively, "the Walcotts") on the same day. *Id.* at ¶ 12. The Mortgage placed a lien on real property described as:

> Plot No. 32-I Estate La Grande Princesse, Company Quarter, St. Croix, U.S. Virgin Islands, consisting of 0.338 U.S. acre, more or less, as more fully shown on OLG Drawing No. 4046 dated January 9, 1981, revised May 6, 1987

(the "Property") (*Id. at* ¶ 8).

Following a Loan Modification Agreement executed by the Walcotts on May 24, 2017, the new principal amount on the loan was $120,739.77 with interest accruing annually at the rate of 3.545% with monthly payments of $545.21 effective July 1, 2017. *Id.* at ¶ 15. Beginning on or about September 1, 2017, Ms. Walcott defaulted under the terms of the Note and the Walcotts defaulted under the terms of the Mortgage by failing to pay the monthly installments of principal and interest as they became due. *Id.* at ¶ 21. Flagstar sent a letter to Ms. Walcott dated October

---

scheduled to occur the following day, on August 17, 2023, the Court issued the Order so as to inform the parties of the Court's ruling. This Memorandum Opinion contains the Court's reasoning for its ruling.

16, 2017 at her mailing address[2] advising her of the default, and that failure to cure the default could result in the debt being accelerated with foreclosure and sale of the property. (*Id.* at ¶ 22; Dkt. No. 31-3). Following Ms. Walcott's failure to cure the default, Flagstar elected to declare the entire unpaid principal sum, with all accrued interest and late charges, due and immediately payable. (Dkt. No. 1 at ¶ 24).

On September 18, 2018, the summons for the instant Complaint filed on August 10, 2018 was returned unexecuted as to both Walcotts. (Dkt. Nos. 14, 14-1 16, 16-1, 18, 18-1).[3] On October 25, 2018, Flagstar mailed service packages to Ms. Walcott's two Florida addresses on file.[4] (Dkt. No. 26-1 at 2). After one service package was returned to Flagstar, Plaintiff then filed a Motion for Service by Publication, which was granted on November 9, 2018. (Dkt. Nos. 20, 21).[5] Thereafter, Plaintiff filed a Motion for Entry of Default against the Walcotts, attaching proofs of service by publication for a newspaper in the Virgin Islands and two Florida

---

[2] The address on the letter—P.O. Box 5232 Kingshill, VI 00851—is the same address that Ms. Walcott notes on the Emergency Motion filed on August 11, 2023. (Dkt. No. 55 at 2).

[3] The process server in Kissimmee, Florida attested that she attempted service on September 4, 2018, but an unknown male at the address stated that a Denise Walcott did not live there, and the leasing office also said that a Denise Walcott did not live at that address. (Dkt. No. 16-1). The process server on St. Croix attested that, on four different dates between September 6 and September 10, 2018, he attempted to locate Ms. Walcott at the Property, her former place of employment, and her mother's place of business. (Dkt. No. 14-1). He said that he was advised that Ms. Walcott had relocated to Florida. *Id.*

[4] These service packages were returned to Flagstar on November 1, 2018 and November 13, 2018. (Dkt. No. 26-1 at 2).

[5] Title 5, Section 112, Subsection A of the Virgin Islands Code provides for substituted service of the summons and the complaint in certain instances, including "when the defendant is not a resident of the Virgin Islands, but has property therein, and the court has jurisdiction of the subject of the action" and "[w]hen the action is to foreclose, satisfy, or redeem from a mortgage, or to enforce a lien of any kind on real estate in the Virgin Islands, or satisfy or redeem from the same." 5 V.I.C. § 112(a). At the hearing, Ms. Walcott testified that she lived on St. Croix by the time of service of publication in St. Croix Avis, a local newspaper. (Dkt. No. 61 at 3 n.1).

3

newspapers. (Dkt. Nos. 25, 26-1; 26-4; 26-5). Following both Walcotts' failure to appear in this action, the Clerk of Court entered default against them on July 19, 2019. (Dkt. No. 27).

On March 3, 2021, the Court entered a default judgment against the Walcotts for $137,894.07 for an unpaid promissory note. (Dkt. No. 35). In the Judgment, the Court (1) declared that, based on the Mortgage executed by the Walcotts, Flagstar held a first-priority lien against the Walcotts' property on St. Croix[6]; (2) foreclosed the Mortgage and all subsidiary liens; and (3) directed that the Walcotts' Property be sold at a Marshal's Sale, with the proceeds to be applied to the outstanding indebtedness.[7] *Id*. at 2-5.

On March 7, 2021, the U.S. Marshals Service attempted to serve Ms. Walcott with the Judgment at the Kissimmee, Florida address, but did not locate her there. (Dkt. No. 38). On June 21, 2022, Flagstar filed a Praecipe for Writ of Execution, which was issued by the Clerk on July 20, 2022. (Dkt. Nos. 45, 46). On April 12, 2023, a Process Receipt and Return was filed with the Court noting that Ms. Walcott had been served at the Property on April 7, 2023. (Dkt. Nos. 52, 53).[8] At that time, Ms. Walcott was served with the Writ of Execution, as well as another document that may have been the Judgment and Order that the Marshal's Service had previously attempted to serve on March 7, 2021.[9] *Id.*

---

[6] The Court granted summary judgment in favor of Flagstar against HUD on the ground that Flagstar's Mortgage had priority over HUD's lien against the Property. (Dkt. No. 36 at 9).

[7] At the hearing on the Emergency Motion, counsel for Flagstar stated that, despite a lack of communication from Ms. Walcott since 2017, Ms. Walcott called Flagstar on March 3, 2021—the same day Judgment was entered—at 7:18 p.m.

[8] On April 12, 2023, the Clerk's Office filed the same Process Receipt and Return twice on the docket.

[9] The Process Receipt and Return indicated that "[Ms. Walcott] was also served the other document." (Dkt. No. 52). During the hearing, the Magistrate Judge identified the other

4

On August 11, 2023, Ms. Walcott filed the instant Emergency Motion. (Dkt. No. 55). Requesting temporary and preliminary injunctive relief, Ms. Walcott represents that the Property is currently the primary residence for her and her minor child; she has "suffered many unforeseen hardships over the last six years"; the financial hardship suffered has affected her ability to be current with the mortgage payments; without much success, she has applied for mortgage assistance programs with Flagstar; and she is currently seeking assistance through the Virgin Islands Housing Authority's Homeowner Assistance Funds Program. *Id.* at ¶¶ 1-8. Ms. Walcott further states that on July 20, 2023 she learned of the upcoming Marshal's Sale and on July 25, 2023, Flagstar informed her that she needed a completed mortgage assistance package 37 days prior to the date of the Marshal's Sale in order to suspend the sale. *Id.* at ¶¶ 9-10. Ms. Walcott contends that despite her efforts to bring the loan into good standing, Flagstar has refused to cooperate because Flagstar "continuously refuses" to provide her with written notification of a denial of her mortgage assistance applications. *Id*. at ¶¶ 14-15. Further, Ms. Walcott contends that notice of default and notice of the foreclosure sale were improperly provided to her. *Id.* at ¶¶ 12-13. Therefore, Ms. Walcott asks that the Court halt the upcoming Marshal's Sale scheduled for August 17, 2023 and schedule a hearing in the matter within 60 days. *Id.* at 2.

On August 11, 2023, the same day that the Emergency Motion was filed, the Court referred the Emergency Motion to the Magistrate Judge for an R&R. (Dkt. No. 57). On August 15, 2023, the Magistrate Judge held a hearing on the Emergency Motion,[10] and issued an R&R

---

document as the Judgment and Order. Ms. Walcott's silence when the document was so identified suggests that the other document may, in fact, have been the Judgment and Order.

[10] At the hearing, at which the Magistrate Judge combined the Motion for a Temporary Restraining Order with that for a Preliminary Injunction, counsel for Flagstar, a Flagstar

recommending that the Court deny the Emergency Motion. (Dkt. No. 61).[11]

## II. APPLICABLE LEGAL PRINCIPLES

Under Rule 65 of the Federal Rules of Civil Procedure, the Court may grant injunctive relief with a temporary restraining order or a preliminary injunction. *Am. Tel. & Tel. Co. v. Winback & Conserve Prog. Inc*., 42 F.3d 1421, 1427 (3d Cir. 1994). Injunctive relief is "'an extraordinary remedy ... which should be granted only in limited circumstances.'" *Id*. (quoting *Frank's GMC Truck Ctr., Inc. v. GM Corp*., 847 F.2d 100, 102 (3d Cir. 1988)). The same legal standard applies to requests for a temporary restraining order and a preliminary injunction. *Smith v. Litton Loan Servicing, LP*, No. Civ. 04-02856, 2005 WL 289927, at *6 (E.D. Pa. Feb. 4, 2005).

To prevail on a motion for injunctive relief, the moving party must show each of the following four elements: (1) a reasonable probability of success on the merits; (2) that the movant will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. *See N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff,* 669 F.3d 374, 385-86 (3d Cir. 2012)*; Kos Pharms., Inc. v. Andrx Corp.,* 369 F.3d 700, 708 (3d Cir. 2004) *(citing Allegheny Energy, Inc. v. DQE, Inc.,* 171 F.3d 153, 158 (3d Cir. 1999))*.* "The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate."

---

litigation representative, counsel for HUD, and the Walcotts appeared. (Dkt. No. 61 at 3 n.2, 5). Dean C. Walcott, Jr. was excused from the hearing because Flagstar does not seek to hold Mr. Walcott personally liable for the debt. (Dkt. No. 61 at 5 n.3).

[11] Because the Emergency Motion seeks injunctive relief against the impending August 17, 2023 Marshal's Sale, the parties did not have 14 days within which to file objections to the R&R as prescribed by 28 U.S.C. § 636(b)(1) ("Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court."). Due to the urgency of determining whether Ms. Walcott was entitled to injunctive relief, the Court ruled on the Emergency Motion prior to that time period.

6

*P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005).

It is well established, however, that the first and second factors are "gateway factors" that the movant must establish in order for injunctive relief to be granted. *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 102-103 (3d Cir. 2022). Thus, "[f]ailure to adequately establish at least a reasonable probability of success on the merits justifies denial of a[] [preliminary] injunction on this ground alone." *Ferraro v. Gayanich*, Civil Action No. 2016-0022, 2017 WL 3083655, at *3 (D.V.I. July 19, 2017) (citing *Ash v. Cort*, 350 F. Supp. 227, 230 (E.D. Pa. 1972), *aff'd*, 471 F.2d 811 (3d Cir. 1973) (citing *Indus. Elecs. Corp. v. Cline*, 330 F.2d 480, 482 (3d Cir. 1964)). The same is true for the ability to establish irreparable harm. *Beberman v. U.S. Dep't of State*, 675 F. App'x 131, 133 (3d Cir. 2017) If the movant fails to demonstrate an imminent risk of irreparable harm, that is "a sufficient ground" upon which to deny a TRO/preliminary injunction. *Beberman,* 675 F. App'x at 134; *see also ACE Am. Ins. Co. v. Wachovia Ins. Agency Inc.*, 306 Fed. Appx. 727, 732 (3d Cir. 2009) (opining that "[a] failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction.") (citing *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989)); *NutraSweet Co. v. Vit-Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999) ("In the absence of irreparable injury, no preliminary injunction would lie, even if the other three elements ... were found.").

### III.   DISCUSSION

#### A.   Reasonable Probability of Success on the Merits

Ms. Walcott argues that the Judgment and Order entered by this Court should be vacated because (1) she was not presented with proper notice of the default on the loan or the foreclosure

sale (Dkt. No. 55 at ¶¶ 12, 13); and (2) Flagstar did not comply with the statutory mediation requirement pursuant to 28 V.I.C. § 531.[12] The Court finds that Ms. Walcott has not shown a reasonable probability of success on the merits to warrant the issuance of a preliminary injunction.

With regard to Ms. Walcott's first argument that she failed to receive proper notice of the default and foreclosure sale, as the Magistrate Judge correctly notes in the R&R, and as supported by the record, various attempts were made by Flagstar and this Court to advise Ms. Walcott of the default and pending foreclosure of the Property. (Dkt. No. 61 at 8). Specifically, on October 16, 2017, Flagstar sent Ms. Walcott correspondence advising that there was an outstanding balance on the loan and failure to cure could result in acceleration of the debt and foreclosure of the Property. (Dkt. No. 31-3). After commencing this foreclosure action, Flagstar then attempted to serve Ms. Walcott on five different occasions—September 4 at her Kissimmee, Florida address and September 6, 7, 8, and 10, 2018 on St. Croix—to no avail. (Dkt. Nos. 14, 14-1, 16, 16-1). Thereafter, Flagstar attempted to serve Ms. Walcott by mail using the Kissimmee, Florida and Fort Lauderdale, Florida addresses on file. (Dkt. No. 26-1 at 2). After one service package was returned, Flagstar then served Ms. Walcott by publication between November and December 2018 in three different newspapers of general circulation in St. Croix, U.S. Virgin Islands, Kissimmee, Florida, and Fort Lauderdale, Florida. (Dkt. No. 23). In fact, at the hearing, Ms. Walcott confirmed that she resided on the island of St. Croix at the time she was served by publication. (Dkt. No. 61 at 3 n.1). Ms. Walcott did not respond or appear. On April 7, 2023, the U.S. Marshals Service personally served Ms. Walcott at the Property—which she has identified as her primary residence—with the Writ of Execution and another document, which may have

---

[12] Ms. Walcott presented the mediation argument during the August 15, 2023 hearing on the Emergency Motion.

been the Judgment and Order.[13] (Dkt. Nos. 52, 53). Therefore, despite her representations in her Emergency Motion that she learned of the foreclosure sale during a July 20, 2023 phone call to Flagstar, Ms. Walcott had notice of the Judgment and impending foreclosure sale four months—at the very least—prior to the filing of her Emergency Motion and the sale. In view of all of the foregoing, Ms. Walcott's assertions that she was not properly provided with notice in this matter are unsupported.[14]

At the hearing on the Emergency Motion, Ms. Walcott also argued that the Judgment and Order should be vacated because Flagstar did not comply with the statutory mediation requirement pursuant to 28 V.I.C. § 531(b)[15]. (Dkt. No. 61 at 8). However, Ms. Walcott did not

---

[13] During the hearing, Ms. Walcott also stated that Flagstar did not inform her that there was an outstanding Judgment during the time that she called Flagstar to receive status reports on her mortgage assistance applications. However, Ms. Walcott did not establish that there was an obligation for Flagstar to do so. In any event, any failure by Flagstar to advise Ms. Walcott of the outstanding Judgment does not raise an issue as to the validity of the Judgment itself. The Court had already determined that Ms. Walcott had not appeared in the action despite being properly served; the Clerk of Court had already entered default; and the Court had already entered Judgment because Flagstar was successful on the merits of its debt and foreclosure claims. Therefore, Ms. Walcott's arguments regarding Flagstar's failure to advise her of the Judgment does not mount a successful challenge against the validity of that Judgment.

Further, Ms. Walcott does not provide authority for the proposition that there was an obligation for the Court or Flagstar to provide Ms. Walcott with personal notice of the Marshal's Sale. *See, e.g.*, *Kell v. Davies*, 63 V.I. 462, 471 (V.I. Super. 2015) (noting, *inter alia*, that the Virgin Islands Code did not require the defendants to receive personal notice of the scheduled foreclosure sale).

[14] During the hearing, Flagstar's counsel noted that the matter has been in a recurring foreclosure posture since 2014. Indeed, there was a prior action in this Court that commenced on March 31, 2014 involving the Walcotts to foreclose on the subject Mortgage. *See Flagstar Bank, FSB v. Walcott*, Civil Action No. 2014-0012. On February 23, 2018, the case was voluntarily dismissed. *Id.* at Dkt. No. 87. Therefore, Ms. Walcott was undoubtedly aware that by failing to make the requisite mortgage payments, that Flagstar would eventually accelerate the debt, place the loan in default, and proceed with a foreclosure action upon Ms. Walcott's failure to cure the default.

[15] Title 28, Section 531, Subsection B of the Virgin Islands Code provides, in pertinent part, that "[p]rior to the entry of any judgment of foreclosure, the parties must provide the Court with evidence that a good faith effort was made to settle the matter through mediation."

appear at any time in this matter prior to the filing of the Emergency Motion, which was after default judgment had been entered against her. Quite clearly, Ms. Walcott and Flagstar could have mediated the matter only if *both* parties—including Ms. Walcott—were present to do so. The Court agrees with the Magistrate Judge that Ms. Walcott—through her failure to appear prior to entry of default judgment—waived the statutory mediation requirement. *See* Dkt. No. 61 at 9 (citing *Wilmington Savings Fund Soc'y., FSB v. Estate of Moolenaar through Moolenaar*, No. 3-18-cv-0105, 2021 WL 4895201 at *4 (D.V.I. Oct. 20, 2021) ("[W]aiver of the statutory mediation requirement is appropriate as no [d]efendant has filed a response to the Complaint or otherwise appeared to defend this matter.").

Accordingly, Ms. Walcott's arguments do not support the conclusion that she has a reasonable probability of success on the merits. In other words, Ms. Walcott is unlikely to succeed in vacating the Judgment and Order entered on March 3, 2021. This first factor, therefore, provides a sufficient basis to deny Ms. Walcott's request for injunctive relief.

**B.    Irreparable Harm**

Irreparable harm is "potential harm which cannot be redressed by a legal or an equitable remedy[.]" *Instant Air Freight Co. v. C.F. Air Freight, Inc*., 882 F.2d 797, 801 (3d Cir. 1989). To satisfy this element, the party moving for injunctive relief must demonstrate that "'irreparable injury *is likely* in the absence of an injunction.'" *Ferring Pharms., Inc. v. Watson Pharmaceuticals, Inc.*, 765 F.3d at 205, 217 n.11 (3d Cir. 2014) (emphasis in original) (quoting *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008)). "It is not enough 'for the harm to be serious or substantial, rather, it must be so peculiar in nature that money cannot compensate for the harm.'" *Beberman*, 2016 WL 1181684, at *3 (D.V.I. Mar. 24, 2016) (quoting *Bieros v.*

*Nicola*, 857 F. Supp. 445, 445 (E.D. Pa. 1994)). The word irreparable "'means that which cannot be repaired, retrieved, put down again, atoned for[.]'" *Id.* (citing *A.O. Smith Corp. v. FTC*, 530 F.2d 515, 525 (3d Cir. 1976) (internal citations omitted)). The Third Circuit has noted that in order for the harm to be imminent, "the injury cannot be remote or speculative; it must be poised to occur before the District Court can hold a trial on the merits." *Par Pharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 279 (3d Cir. 2019) (citing *Chems. Ltd. v. Formosa Chem. & Fibre Corp.*, 229 F.3d 254, 263-64 (3d Cir. 2000)).

The Court finds that Ms. Walcott has not shown irreparable harm. During the hearing, Ms. Walcott said that she would face irreparable harm if the foreclosure sale went forward because (1) she and her minor son would not have a place to live and (2) she would suffer mental and emotional damages as a result of the impending foreclosure sale. (Dkt. No. 61 at 5, 9). However, the record does not support the proposition that Ms. Walcott could not find replacement housing, if, and when, she loses possession of the home. Instead, Ms. Walcott asserted that because the cost of living is higher than before, the mortgage payments would be "more comfortable than paying two or three times more for rent," which she asserted was "out of her range." Although she stated that rental payments would be "out of her range," the Court notes that Ms. Walcott did not offer any evidence to show that she would not be able to afford *any* rental unit. Instead, Ms. Walcott only expressed a preference to have an allegedly lower mortgage payment and merely speculated—without support—that rent would be two to three times higher. The hearing record also shows that Ms. Walcott is currently employed. The Court does not find—and Ms. Walcott did not offer any evidence—that her financial condition is such that rental units would be beyond her ability—rather than her desire—to pay, and that she would therefore be unable to obtain another housing opportunity. Because Ms. Walcott did not establish

that she could not find another residence, the harm imposed by the foreclosure sale was not such that it "cannot be repaired, retrieved, put down again, atoned for." *Beberman*, 2016 WL 1181684, at *3. Thus, irreparable harm has not been established.[16]

Moreover, as Flagstar's counsel noted at the hearing, Ms. Walcott is afforded a statutory period of redemption pursuant to 28 V.I.C. § 535[17] that runs for six months from the date of the order confirming the Marshal's Sale. (Dkt. No. 35 at 3). As it relates to Ms. Walcott's loss of title to the Property, this redemption period will provide Ms. Walcott with additional time to recover the Property. Indeed, it has been found that there is no threat of irreparable harm where state law provides a statutory redemption period. *See, e.g.*, *Livonia Properties Holdings, LLC v. 12840–12976 Farmington Road Holdings, LLC,* 399 F. App'x 97, 104 (6th Cir. 2010) (where state law provides statutory right of redemption for six months after sale, "any harm [that plaintiff] might suffer from foreclosure was not irreparable"); *Tokarz v. Mortg. Elec. Registration Sys., Inc.,* No. 17-cv-01022, 2017 WL 3432100, at *4 (D. Minn. May 18, 2017) (internal citations omitted) (finding that plaintiff had not made a requisite showing of irreparable harm because, *inter alia*, the statutory right of redemption remained available). Therefore, the availability of the redemption period pursuant to 28 V.I.C. § 535 decreases the imminency of the harm Ms. Walcott may suffer as it relates to loss of title to her Property.

---

[16] The Court also finds that Ms. Walcott has not made a requisite showing of irreparable harm through her vague allegation that she would suffer mental and emotional damages as a result of the impending foreclosure sale. (Dkt. No. 61 at 5).

[17] Title 28, Section 535 of the Virgin Islands Code provides, in pertinent part, "the judgment debtor or his successor in interest, on paying the amount of the purchase money, with interest at the legal rate per annum thereon from the date of sale, together with the amount of any taxes which the purchaser may have paid thereon after purchase, shall redeem within six months after the order of confirmation of sale."

Because Ms. Walcott has not succeeded on the first two gateway factors for injunctive relief—reasonable probability of success on the merits and irreparable harm—the Court need not reach the remaining factors because Ms. Walcott's failure to satisfy *either* of those factors provides sufficient grounds to deny the request for injunctive relief. Accordingly, the Court will deny Ms. Walcott's Emergency Motion.

### IV.   CONCLUSION

For the reasons discussed above, the Court will adopt as modified herein the Magistrate Judge's Report and Recommendation (Dkt. No. 61) on Defendant Denise Walcott's "Emergency Motion for Temporary Restraining Order, Emergency Motion for Preliminary Injunction to Enjoin [Foreclosure] Sale Scheduled for August 17, 2023" (Dkt No. 55). Accordingly, the Court will deny the Emergency Motion, including the preliminary injunction requested therein.

Date: August 24, 2023                                             _____/s/_____
                                                                  WILMA A. LEWIS
                                                                  District Judge